Case 86—PETITION EQUITY—January 6.

# Cotton, Trustee, v. Graham, &c.

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. WHILE THE OBLIGATION TO PROVIDE FOR A WIFE OR CHILD CONSTITUTES A MERITORIOUS CONSIDERATION for an undertaking to pay money, a voluntary agreement to provide for a *collateral* relation, as a sister-in-law, will not be enforced.

2. CONTRACTS—CONSIDERATION.—Where several persons jointly undertake to pay a sum of money, the sole consideration as to each of the obligors being the joint undertaking, the contract will not be enforced where no one of the obligors has performed his part of the contract; and the payment of interest by one of the obligors is not such a performance as will authorize the enforcement of the contract against the other obligors.

3. SAME—TRUSTS.—Where a trust is created by an undertaking to pay to one, as trustee for another, a sum of money, to be invested by him for the beneficiary, the mere acceptance of the trust constitutes no consideration for the undertaking to pay the money, which can not, in the absence of a consideration, be enforced.

4. A MORTGAGE executed to secure a note which is without either a valuable or a meritorious consideration will not be enforced.

5. PROMISSORY NOTE—CONSIDERATION.—A promissory note which recites that it is "*for value received*, and in consideration of love and affection," imports a valuable consideration, and a petition upon such a note averring in substance that the consideration was "value received," and "love and affection," it was error to sustain a demurrer thereto.

W. LINDSAY FOR APPELLANT.

I. As a written promise to pay imports a valuable consideration, and the obligation sued on recites the fact that it was executed as well for "value received," as for love and affection, the demurrer should have been overruled, and the defendants required to aver and prove the want of a valuable consideration.

II. The acceptance of the trust by Cotton, and his agreement to execute it, constitute in law a valuable consideration.

1. The consideration for a promise to pay money need not pass from the obligee to the obligor; it may just as well pass from a third party. (Farrow v. Turner, 2 H. K. Mar., 496.)

2. Prejudice to the promisee is as valid a consideration as a benefit to the

Cotton, Trustee, v. Graham, &c.

obligor. (1 Littell, 121; 4 T. B. Mon., 532; Harrod v. Black, 1 Duvall, 181.)

3. The incurring of a responsibility, at the request of another, is a sufficient consideration to support a promise to pay. (Lucas v. Chamberlain, 8 B. Mon., 277.)

4. Subscriptions for charitable or benevolent purposes, payable to a particular person, will be enforced if that person undertakes to collect and apply them in accordance with their terms. (Ladies' College v. French, 16 Gray, 196; Amherst College v. Cowles, 6 Pick., 427; Williams College v. Danforth, 12 Pick., 541; Thompson v. Paige, 1 Met. (Mass.), 565; Chitty on Contracts, pages 50-51, note.)

So in this case, by his written acceptance, the trustees agreed and undertook to carry out the "understanding" of the parties, and thus independent promises were made "which constitute a legal and sufficient consideration for each other."

5. It is immaterial that the trouble, loss or obligation which the promissee has taken upon himself at the promissor's request is in fact of the most trifling character, provided it be not utterly worthless. (Chitty on Contracts, 11 ed., p. 317; Pollock on Contracts, p. 158.)

III. The several undertakings of each one of the obligors to contribute his or her proportionate share to the fund to be raised for the benefit of the widow of the deceased brother constitute sufficient considerations to support the correlative promises of each and all the other obligors. (Graves v. Graves, 7 B. M., 213; Twin Creek Turnpike Co. v. Lancaster, 79 Ky., 552; Mark v. Clark and Wife, 11 B. M., 44.)

There has been a part performance in this case, which brings it within the very letter of Graves v. Graves, 7 B. M.

WM. McKEE DUNCAN on same side.

1. The acceptance of the trust by the appellant was a valuable consideration, and is sufficient to support the contract. (Collier v. The Baptist Education Society, 8 B. M., 68; Trustees of Ky. Female Orphan School v. Fleming, &c., 10 Bush, 238; Hill on Trusts, 214, 447 and 449; Hardin v. Baird's Heirs, Litt. Sel. Cases.)

2. The mutual promises of the parties themselves arising from the execution of the joint and several obligations are sufficient to uphold the contract. (Graves v. Graves, 7 B. M., 215; Mark v. Clark and Wife, 11 B. M., 44.)

3. This is an *executed* trust, and although voluntary, it will be enforced. (1 Washburn on Real Property, 23; 2 Bouvier's Law Dictionary, title "Executed Trust;" 2 Washburn on Real Property, 452-3; Hill on Trustees, pages 82, 85 and 89, and note to page 88; Story's Eq., section 973; 3 Parsons on Contracts, 360; Gault v. Trumbo, 17 B. M., 685.)

4. A trust may be created by an obligation such as that sought to be enforced. (Hill on Trustees, 44, 236 and 446.)

vol. 84   43

Cotton, Trustee, v. Graham, &c.

5. The appellant holds the *legal title* to the mortgaged property in trust. (Stewart v. Barrow, 7 Bush, 371.)

    The cases relied upon by appellees decide only that the mortgagor is substantially the real owner, and that he is entitled to the rents. (Douglass v. Cline, 12 Bush, 621; Newport and Cin. Bridge Co. v. Douglass, 12 Bush, 673; Woolley v. Holt, 14 Bush, 791; Taliaferro v. Gay, 78 Ky., 498.)

6. A mortgage can be made by way of gift. (Jones on Mortgages, section 614; Bucklin v. Bucklin, 1 Abb. App. Dec. (N. Y.), 242; Campbell v. Tompkins, 5 Stew. (N. J. Eq. Rep., 32), 172.)

7. The payment of interest upon the faith of the mutual promises is sufficient to uphold the contract. (Graves v. Graves, 7 B. M., 215.)

JAMES S. PIRTLE FOR APPELLEES.

1. As those of the obligors who have made small payments are resisting further payments and neither the trustee nor the beneficiary has incurred any obligations or expended any money in reliance upon the promise, it is without consideration.

    This case distinguished from those of subscriptions to charitable societies. (Collier v. Baptist Education Society, 8 B. M., 69; Trustee, &c., v. Fleming, 10 Bush, 238; Cottage St. Meth. Ch. v. Kendall, 121 Mass., 528; Trustees v. Garvey, 53 Ill., 401; Philamath College v. Hartlers, 5 Or, 158; Barnes v. Perine, 12 N. Y., 18; 13 Am. Dec., 458.)

2. The relationship existing between the widow of William Parker and his brothers and sisters was not of itself a meritorious consideration sufficient to support the promise. (McIntire v. Hughes, 4 Bibb., 187; Stovall v. Barnett, 4 Litt., 208; Mahan v. Mahan, 7 B. M., 579; Ford v. Ellingwood, 3 Met., 362; Arnold v. Park, 8 Bush, 4; Buford's Heirs v. McKee, 1 Dana, 107.)

3. The mutual promises of the obligors are not alone sufficient to support the contract.

    The construction given by counsel for appellant to the case of Graves v. Graves, 7 B. Mon., does not agree with the view of that case taken by the court in subsequent cases. (Mark v. Clark, &c., 11 B. Mon., 44; Nunnally v. White, 3 Met., 589.)

4. The fact that partial payments have been made imposes no liability to pay more, neither the trustee nor the beneficiary having incurred liability or expended money.

5. It appearing on the petition with the exhibits that there was no valuable consideration to support the promise sued on, the question of no consideration can be raised by demurrer. (Steadman v. Guthrie, 4 Met., 152)

6. The presumption of a sufficient consideration ceases to exist whenever

the party relying upon the agreement undertakes, though unnecessary, to show what was the consideration.

7. The claim that the trust in this case is executed is without foundation. There could not be a clearer case of an executory trust.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellees, who describe themselves as legatees of Samuel Parker, deceased, executed to Charles B. Cotton, as trustee for Amelia Parker, wife of Wm. Parker, deceased, their joint and several obligation for the sum of five thousand dollars, payable on the first of March, 1875. The consideration of the obligation is "for value received, and out of love and affection we have for her as the wife of our brother, Wm. Parker, deceased." They further agreed to secure the payment of the promised sum by executing a mortgage to the trustee on a tract of sixty-two acres of land lying in the county of Jefferson. The trust was accepted by Cotton, and by its terms he was to invest, at his discretion, the proceeds of the note in interest-bearing bonds, the annual income to be paid to the beneficiary, with the right on her part to dispose of the whole sum at her death by will or otherwise. The mortgage was executed as the original trust provided, and the obligors failing to pay the note, the trustee instituted the present action in equity, asking a judgment for the debt and a sale of the mortgaged property to pay it. A demurrer was filed to the petition, and sustained on the ground that the consideration alleged was not sufficient to support the promise or agreement to pay.

It is assumed in argument that the statements of the petition show only the consideration of love and affection on the part of the appellees for the execution of

the obligation for the benefit of their sister-in-law, Mrs. Parker, and that such a consideration, where the relationship is so remote, or where none in fact existed except such as sprung from the marital relation that existed between their deceased brother and his wife, will not support the agreement to pay.

If the facts alleged authorized the conclusion reached by counsel and the court below, there would be less difficulty in determining the question involved. This court has heretofore held, in several cases, that a voluntary agreement to provide for a collateral relation will not be specifically enforced. The obligation to provide for a wife or child constitutes such a meritorious consideration as will authorize a court of equity to enforce it ; but as said in Buford's Heirs v. McKee, &c., 1 Dana, 108 : "The whole foundation of the principle which turns mere gratuitous engagements and voluntary promises of bounty and munificence into contracts of obligatory efficacy is of such doubtful equity that we feel no disposition to carry it further than it has already gone." That was a case where Henry Paulding had executed a covenant to Buford, his nephew, for the conveyance of a tract of land at his, Paulding's, death, and on a bill filed to enforce the covenant the relief was denied. (See McIntyre v. Hughes, 4 Bibb, 187 ; Stovall v. Barnett's Ex'rs, 4 Littell, 207 ; Ford v. Ellingwood, 3 Met., 359, and Arnold v. Park, 8 Bush, 3.)`

The case of Graves v. Graves, 7 B. Mon., 213, is relied on by counsel for the appellant as sustaining his right to recover. In that case there was a verbal agreement between the brothers and sister of the appellant, by which they were to make an equal con-

tribution to the appellant (their brother) in order that
he might have as much of the estate of their father as
they had received, and in pursuance of the agreement
some of the brothers paid their portion of what they
had agreed to contribute, and the appellee (another
brother) refused to pay any sum whatever on the
ground of a want of consideration. It was said in that
case that "the contract, when actually entered into,
furnished a sufficient consideration to make it binding
on all, and that a failure of any one to perform his
undertaking, and especially after others had performed
theirs, would be a breach not only of moral but of
legal duty to them." The court, however, in reviewing that case, directed the court below to instruct the
jury that if such a mutual agreement had been made,
and that one of the brothers, in consequence of that
agreement, had advanced to the plaintiff a slave, and
the others had executed their notes for a sum equal to
the estimated value of the slave, and the note in question was the one thus executed by the defendant, the
consideration was sufficient and the plaintiff entitled
to recover. The court was careful not to base the instruction on the idea that the mere agreement entered
into between the parties was a sufficient consideration
to authorize the recovery, and in the subsequent case
of Mark v. Clark and Wife, 11 Ben. Monroe, 46, the
court, in alluding to the case of Graves v. Graves,
said: "The mutual promise of each, and the fulfillment of the promise by the most of them, was held (in
that case) to constitute a sufficient and valuable consideration for the promise of the defendant. It is not
settled in that case, or in any others of which we have

any knowledge, either that the affection of an uncle for his niece, or an agreement by one heir, under no legal obligation whatever to his co-heir, to make that co-heir equal to the advancements made to himself or to others, does form such a consideration as will make enforceable a note or bond to pay a sum of money for that purpose. It seems to us that such is not the law.''

Where one of three parties had performed his part of a contract that he had been induced by others to enter into, on the consideration that they would perform the same services or pay the same amount of money for a particular purpose, there might be some reason for holding that a compliance with its terms might be enforced at the instance of the contracting party or the beneficiary. Whether this doctrine should be made to apply to mere agreements by two or more persons to give to another a sum of money, without any special averment and proof that the promise by the one was the consideration of the promise by the other, is not by any means certain.

In this case, there has been no performance by either party, and if one had paid the interest, that payment would not preclude him from relying on the want of consideration as to the balance. Here all the parties whose names appear as obligors are pleading a want of consideration, and if the consideration expressed of love and affection is the only consideration, the obligation created no legal liability.

The mere acceptance by the trustee of the trust by which he was to make the investments when the proceeds came to his hands, constituted no consideration.

If it did, then every voluntary executory trust where a trustee intervened could be enforced. He has received nothing in the way of the trust fund, or gone to any trouble or expense other than the mere acceptance of the trust. Nor was the trust executed.

A trust was created by naming the trustee and agreeing to pay to him the note, the proceeds of which was to constitute the trust fund. The fund has never been paid to the trustee, and the effort now is to compel its execution. The agreement to convey land in trust, as in the case of Paulding, without any other consideration than the affection for the collateral kinsman, will not be enforced, but when executed by a conveyance it becomes perfect and complete and binding on all the parties, unless assailed on some equitable ground. Nor will the chancellor deprive the obligors of the legal title to the land mortgaged, that the equitable lien of the trustee may be enforced in the absence of a valuable or meritorious consideration.

The land is simply held as in pledge for the payment of a note without any consideration, and while under the ancient doctrine in reference to mortgages upon realty, where the legal title passed to the mortgagee and the equity only remained in the mortgagor, the mortgage might be foreclosed and the trust to that extent deemed executed, under the later decisions of this court the equity only being with the mortgagee, it can not be well argued that the legal title-holder will be deprived of his estate by reason of some intervening equity that has at best an undefined moral obligation to support it. This class of cases has always been distinguished from obligations to charitable institu-

tions, where the donations are usually authorized by law, and an obligation imposed on the institution or the trustees to appropriate the fund for the purpose of carrying into effect the objects of the institution.

We have discussed this branch of the case at some length, because counsel on each side have, in their briefs as well as in oral argument, rested their case mainly on the idea that the mutual promise in such a case was binding on all, and could be enforced, or that the mere payment of interest by one created a valuable consideration as to all; and as the case must go back, it is not only proper but necessary that the questions raised should be disposed of.

The obligation to pay the five thousand dollars recites a consideration other than that of love and affection. The consideration expressed is "for value received, and in consideration of love and affection." The writing imports a valuable consideration, and the averments of the petition are, in substance, that the consideration was for value and for love and affection. What the consideration was is the subject of proof when the issue is properly made, and the demurrer should have been overruled and the appellees required to plead. The statement in the petition that the object and effect of the trust was to secure to Mrs. Parker an annuity during life, does not exclude the idea that it was based on a valuable consideration.

The judgment sustaining the demurrer is reversed, and cause remanded with directions to overrule the demurrer, and for proceedings consistent with this opinion.